**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | **CRIMINAL NO. 1:15-cr-00622-GLR** |
| **ADRIAN MCFADDEN,** | * | |
| | * | |
| *Defendant*. | * | |
| | * | |

**\*\*\*\*\*\*\***

## GOVERNMENT'S OPPOSITION TO RENEWED RELEASE REQUEST AND OPPOSITION TO HEARING REOPENING DETENTION

Last week, Judge Douglas R. Miller detained defendant Adrian McFadden. (ECF 114). The United States opposes McFadden's renewed request for release. This Court need not conduct a hearing because it denied an earlier release request without a hearing, in light of McFadden's record (ECF 94) and because McFadden improperly seeks to reopen detention without a statutory basis to do so. By way of further explanation, the government writes:

BACKGROUND

McFadden is a proven flight risk. He has done everything in his power to demonstrate how much of a flight risk he is. In January 2025, he violated the trust of the Court's release order *within 24 hours* of being on release by representing he would attend a religious service, and then going to three unauthorized locations instead:

> Mr. McFadden requested permission to leave the residence for Jummah Prayer Service on January 31, 2025 from 1-4pm located at 1125 Appleton Street. He was authorized to be out of the residence from 12:30pm to 4:30pm. Mr. McFadden left his residence at 1:17PM for his requested 1PM prayer service. His GPS points show that he arrived at 1125 Appleton Street, but only stayed for approximately 2 minutes. . . . On February 3, 2025, Mr. McFadden admitted to this Officer that he showed up late to Jummah, and left, but returned home prior to his return time. Mr. McFadden was reprimanded for violating the terms of his release conditions and was advised that he was only permitted out for his prayer service, and if it wasn't

available, he should have immediately returned home. He violated the trust of the Court within 24 hours of his release to home confinement by requesting release for religious services, then not attend and frequent several unauthorized locations. He is not a suitable candidate for home confinement and should be returned to the custody of the U.S. Marshal Service.

(*See* Kathleen Galloway, U.S. Probation, Notice of Apparent Violation and Request for Bail Review, 15-CR-622-GLR (Feb. 3, 2025)).

Then, even worse, in February 2025, McFadden fled the District Court building before a bail hearing, *cut off his ankle monitor, and was in the wind for a month*:

> On February 5, 2025, Mr. McFadden's GPS unit indicated that he was present at the United States District Courthouse in Baltimore at 9:06AM. … Mr. McFadden failed to appear in Court for his Bail Review hearing. He cut off his anklet at 9:27 and has absconded from supervision. … [T]his Officer received a call from Mr. McFadden's mother who advised that his attorney told him he was going to jail and he had a panic attack and left the Courthouse. . . . His current whereabouts are unknown.

(ECF 85 at 3).

This Court previously determined that McFadden's record of noncompliance and flight was significant enough to deny release without a hearing:

> PAPERLESS ORDER denying 91 Emergency Motion for Release from Custody as to Adrian McFadden (1). A review of the record of Mr. McFadden's compliance after the Court entered 82 Order Setting Conditions of Release, the pending motion, and 93 Response in Opposition *leads the Court to conclude that Mr. McFadden presents too great of a flight risk to be released from custody to attend his brother's funeral*. No hearing is necessary. Local Rules 105.6 and 207.1 (D. Md. 2023). Signed by Magistrate Judge Erin Aslan on 5/21/2025.

(ECF 94 (emphasis added)).

McFadden has additional instances of absconding and failures to appear. (*See* ECF 30 at 9 (March 2010 warrant issued for absconder); and ECF 30 at 12 (January 2012 warrant for failure to appear and August 2012 warrant for failure to appear)).

2

Also relevant to McFadden's burden under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a)(1), there is a record of untreated (by his volition) mental health ailments, weapons possession, and allegations of violence against women. The current violations of supervised release relate to his repeated refusal to receive mental health treatment. (*See* Kathleen Galloway, U.S. Probation, Violation Report #1, 15-CR-622-GLR (Mar. 25, 2026)). He has two firearms convictions. (ECF 30 at 6, 9). And, there are multiple domestic abuse allegations, from March 24, 2026, May 14, 2024, March 5, 2023, and January 22, 2023, which all seem to have been dismissed, seemingly due to the victim's refusal to speak with law enforcement. (ECF 72 at 2; Violation Report #1).

THE GOVERNMENT'S POSITION

*A.    This Renewed Request or Request to Reopen Detention should not go to a hearing*

This Court should deny McFadden's request without a hearing. As an initial matter, before wading unnecessarily into an analysis of McFadden's § 3143 burden, this Court should deny his request without a hearing (as it did previously, ECF 94). McFadden has no authority under the statute to reopen detention. He appears to conflate a § 3142 proceeding—which explicitly allows defendants to reopen detention, *see* § 3142(f)(2)—with a § 3143 proceeding which does not (likely due to the short time between detention and revocation hearings). Unless McFadden can explain the propriety of allowing defendants unlimited chances to reopen detention without any authority under Rule 32.1 or § 3143, this request should be denied without a hearing. Otherwise, a defendant will get unlimited bites at the apple before the magistrate bench, circumventing the proper course of review before the district court judge. *See* 18 U.S.C. § 3145.

It is of no matter that Judge Miller remarked that McFadden could pursue a different release plan with a more legitimate mental health facility. (*See* ECF 114 at 2). Whether Judge Miller was imagining a § 3142(f)(2) reopening motion or another form of relief, the only relief provided in

3

the statute for § 3143 is through review to the district court judge under § 3145.[1] For McFadden to show he is entitled to reopen detention with a new magistrate judge, he should have to specify his statutory basis for doing so.[2]

As explained in the next section, this Court could also deny McFadden's request without a hearing given his substantial record of violating the Court's trust.

B.      *Even if this Court were to revisit the § 3143 analysis, McFadden cannot meet his burden*

This Court already denied McFadden release on conditions due to his significant record of violations. (ECF 94). He violated his conditions of release within 24 hours of being given that trust. He later cut off a GPS ankle monitor and absconded for a month. And there are additional failures to attend court hearings in his background. Though the March 26 Detention Hearing has not been transcribed, the undersigned represents that Probation Officer Galloway stated, of the hundreds of individuals she's supervised, less than 1% cut off their ankle monitors and abscond. McFadden is thus one of the most extreme examples of a flight risk. It strains credulity that this is even a question. And his request requires this Court to effectively reverse itself when it determined that "McFadden presents too great of a flight risk to be released from custody" to attend a funeral. ECF 94. He assuredly has not met his burden of showing by clear and convincing evidence that he is not a flight risk; rather, he is on the opposite end of the spectrum—a demonstrated flight risk.

---

[1] In an analogous context, the Supreme Court explained the significance of Congress electing to include something in one statutory provision but not another. *Esteras v. United States*, 606 U.S. 185, 195 (2025) ("This conclusion follows directly from the application of a well-established canon of statutory interpretation: '*expressio unius est exclusio alterius*'—in plain English, 'expressing one item of [an] associated group or series excludes another left unmentioned.' . . . [O]ur task is to give effect to, not nullify Congress' choice to include [a] factor in some provisions but not others.") (internal quotations and citations omitted). Applied here, the *expressio unius* canon suggests Congress decided defendants are not able to reopen detention in a § 3143 proceeding, though they may in a § 3142 proceeding. Thus, defendants seeking court relief in a § 3143 proceeding are limited to § 3145 review.

[2] As of this filing, the docket does not reflect a motion or notice of a hearing, and it is not clear on what statutory basis McFadden seeks the hearing.

The undersigned also represents that part of McFadden's argument during the March 26 Detention Hearing was that not taking medication and refusing mental health treatment was because it was a personal choice based on his personal autonomy. Beyond being a requirement as part of his conditions of release, it casts doubt on his ability to show he is not a danger to the community. His psychological evaluation attributed his conduct—weapons possession, absconding, aggression, and drug use—to his mental health issues being untreated and unmedicated. So as long as he maintains his personal choice not to treat those ailments, the combination of mental health issues, firearms possession, and allegations of violence should give this Court pause regarding community safety. McFadden cannot prove either part of his burden under Rule 32.1(a)(6) and § 3143(a)(1).

CONCLUSION

It should not seriously be debated that McFadden presents a substantial risk of flight. And with his record, he also cannot show that he is not a danger to the community. Though he is not entitled to reopen detention, if this Court did revisit it, it should deny his request.

Kelly O. Hayes
United States Attorney

By: _____/s/_____

Gregory B. Conner
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system on June 30, 2026, which will forward a copy of the filing to all counsel of record.

By:      _____/s/_____

Gregory B. Conner
Assistant United States Attorney