**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  1:15-cr-00622-GLR** |
| | : | |
| **ADRIAN MCFADDEN,** | : | |
| | : | |
| **Defendant** | : | |

---

**MOTION TO REOPEN DETENTION HEARING AND REPLY TO GOVERNMENT'S
RESPONSE FOR REQUEST TO REOPEN THE DETENTION HEARING**

Defendant Adrian McFadden hereby files this motion to reopen the detention hearing and reply to the government's recent filing styled as the "Government's Opposition to Renewed Release Request and Opposition to Hearing Reopening Detention."  *See* ECF No. 116. The government's arguments lack merit.  In support, Mr. McFadden states as follows:

## I.    GOVERNING PRINCIPLES

A plain reading of 18 U.S.C § 3143(a)(1) allows for a detention hearing.  It says that a judicial officer shall detain "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." § 3143(a)(1).  There is no temporal element to the language.  Meanwhile, Federal Rule of Criminal Procedure 32.1 points to § 3143(a)(1)—and § 3143(a)(1) does not restrict that finding to a one-bite-at-the-apple hearing.

This Court may only ignore a statute's plain reading upon concluding that it leads to an absurd result or contradicts legislative intent.  *See RCI Tech. Corp. v. Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir. 2004).  Odd results, however, are not absurd.  *See Exxon Mobil Corp. v.*

1

*Allapatah Servs., Inc. Co.*, 599 U.S. 393, 414 n.13 (2010).   Absurdity also does not reach "substantive errors arising from a drafter's failure to appreciate the effect of certain provisions." *See* Antonin Scalia and Bryan Garner, <u>Reading Law:  The Interpretation of Legal Texts </u>238 (2012). As to legislative intent, "[j]udges are not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork about expectations."  *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 683 (2020).

If the Court were to speculate on Congress' intent, the procedural stage of this case matters. At this stage in Mr. McFadden's legal proceedings, the Court's focus is necessarily forward-looking, and so, more concerned with reintegration into the community. As the Supreme Court recently articulated:

> Supervised release…"is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U. S. 39, 50, 114 S. Ct. 1259, 127 L. Ed. 2d 611 (1994). Rather, it "fulfills rehabilitative ends" and "provides individuals with postconfinement assistance." *United States v. Johnson*, 529 U. S. 53, 59-60, 120 S. Ct. 1114, 146 L. Ed. 2d 39 (2000). So when a defendant violates the conditions of his supervised release, it makes sense that a court must consider the forward-looking ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the backward-looking purpose of retribution.

*See Esteras v. United States*, 606 U.S. 185, 186 (2025).

This Court has the authority to reopen Mr. McFadden's detention hearing, and especially so, because US Probation has come forward with a precedent condition in Judge Miller's Detention Order.  *See* ECF No. 114 (Detention Order) (specifying that "if an inpatient program meeting Mr. McFadden's treatment needs can be identified…the Court would likely find that the availability of that program…would meet the threshold for release under 18 U.S.C. § 3143(a)").

## II.  RELEVANT INFORMATION

On Friday, June 26, 2026, the parties appeared before Judge Miller for a detention hearing. The government argued for Mr. McFadden's detention.  The defense presented two alternatives to detention.  First, it proposed that the Court allow Mr. McFadden to live with his girlfriend.  Second, the defense proposed that the Court allow Mr. McFadden to return to the Treyway program, where he was previously enrolled for inpatient treatment.

The day prior, US Probation had met with Mr. McFadden's girlfriend and inspected her home.  There were no problems with her physical abode.[1]  Still, US Probation took issue with the fact that Mr. McFadden's girlfriend worked from 7 a.m. to 7 p.m., and that her mother, who also occupies the home and consented to Mr. McFadden's stay, worked from 2 p.m. to 10 p.m.

Shortly before the hearing, undersigned counsel also received written notification from Treyway indicating that it would allow Mr. McFadden to return if released from custody.  It proffered this information to the Court.  But US Probation raised concerns that Treyway did not communicate directly with its office—it allowed Mr. McFadden to leave the facility for activities, on multiple occasions sent Mr. McFadden to an emergency room, and ultimately, released him without any follow-up plans.[2]

---

[1] E-Mail from U.S. Probation Officer Kathleen Galloway, U.S. Probation Officer, to Assistant United States Attorney Greg Connor and Assistant Federal Public Defender Gabriel Reyes (Jun. 25, 2026) (on file with author).

[2] Oral Argument at 10:44:00, *United States v. McFadden*, No. 1:15-cr-00622-GLR (ECF No.113); *Id.* at 11:14:00.  Given the short turnaround time with this briefing, undersigned counsel has been unable to procure a transcript.  However, federal courts consider the audio recording of a detention hearing as part of the record.  *See United States v. Mire*, Case No. 1:11-cr-16-WTL-KPF-1, 2011 U.S. Dist. LEXIS 37761, *3 (S.D. In. Apr. 6, 2011)).  Undersigned counsel will move via a separate motion to file the audio recording as Exhibit "A".

The defense presented its two alternatives to incarceration to address three of Mr. McFadden's apparent shortcomings: executive functioning skills, homelessness, and mental health struggles. Although he described the observation as "pop psychology," Judge Miller agreed that Mr. McFadden likely lacked executive functioning skills—as in, the ability to follow through on things he intends to do.[3] US Probation itself noted that Mr. McFadden's mother has no space for him in her home, which pushes him into temporary living arrangements with friends and family.[4] Lastly, US Probation (and the Court too) acknowledged that Mr. McFadden had undertaken significant work with a psychologist since he last appeared for a detention hearing.[5] *See* ECF No. 97 (Sentencing Memorandum).

Judge Miller encouraged US Probation and the defense to work together to find an alternative placement that would provide additional layers of security.[6] In this regard, his comments were responsive to US Probation's concern that Treyway does not maintain a direct line of communication with their office. He "telegraph[ed]" that he would likely fashion a release order if US Probation located an appropriate placement (dual diagnosis, mental health, sufficient security measures, communication with US Probation).[7]

---

[3] *Id.* at 11:26:40.

[4] *Id.* at 10:43:07.

[5] *Id.* at 11:23:40; reiterated at 11:26:00.

[6] *Id.* at 11:27:25.

[7] *Id.* at 11:25:29.

Judge Miller did not write an order contemplating automatic release only because he wanted a judicial officer to further review, adjust, and pronounce conditions specific to the program that US Probation would later identify and approve for Mr. McFadden's placement.[8]

Following the hearing, US Probation Officer Galloway met with Mr. McFadden in the US Marshals lockup to gather information about his medical insurance coverage. She also conferred with the leaders of her office. Ultimately, she submitted paperwork for her office to pay for his treatment at the Shoemaker dual-diagnosis treatment facility in Sykesville, Maryland.[9]

Upon receiving this information from USPO Galloway, undersigned counsel contacted chambers and asked for a setting of the hearing. Noticeably, the government participated in that exchange and noted its availability on Thursday or Friday of this week.[10] At no point did the government raise a concern about the propriety of this Court reopening Mr. McFadden's detention hearing. Its only objection in this regard was as to what Judge Miller meant by a "secure facility."[11]

In its response, the government now claims that this Court is without jurisdiction to fashion a release order. It revisits arguments that Judge Miller rejected in his oral pronouncement and written ruling. Mainly, it asserts that there are no conditions that would assure the Court of Mr. McFadden's reappearance or safeguard the community's safety. The government's assertions contradict Judge Miller's oral pronouncement and written order, wherein he wrote:

---

[8] *Id.* at 11:27:53; reiterated at 11:29:59.

[9] E-Mail from U.S. Probation Officer Kathleen Galloway, U.S. Probation Officer, to Assistant Federal Public Defender Gabriel Reyes (Jun. 26, 2026) (on file with author).

[10] E-Mail from Assistant United States Attorney Greg Connor to Chambers and Assistant Federal Public Defender Gabriel Reyes (Jun. 29, 2025) ("I cannot make tomorrow or Wednesday, so I'm asking that the hearing be Thursday or Friday.") (on file with author).

[11] Oral Argument at 11:28:41.

Neither of the release options ***presented today*** allow the Court to find by clear and convincing evidence that Mr. McFadden is not a flight risk in light of the prior conduct detailed by his Probation Officer at the hearing, most saliently his failure to appear for a bail review hearing and cutting off of his ankle monitor on February 5, 2025. ***However, if an inpatient program meeting Mr. McFadden's treatment needs can be identified that satisfies U.S. Probation's concerns regarding (1) accounting for Mr. McFadden's whereabouts and (2) appropriate communication with the Probation Officer, the Court would likely find that the availability of that program, together with Mr. McFadden's having undergone a significant psychiatric evaluation and made commitments to engage with treatment, would meet the threshold for release under 18 U.S.C. § 3143(a).***

ECF No. 114 (emphasis added).

## CONCLUSION

US Probation has identified an adequate inpatient facility that addresses its concerns, and in reliance on Judge Miller's oral pronouncement and order, Mr. McFadden requests release.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____
GABRIEL REYES
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) (410) 962-3976
Email: gabriel_reyes@fd.org